————o————

## No. 4402.

### Court of Appeal, Parish of Orleans.

## EDWARD C. WEBRE & CO. VS. TEXAS AND PACIFIC RAILWAY COMPANY.

Where the way bill of a railroad company recites that the consignment consisting of a car of coal is shipped "from" the City of New Orleans, "to" the "spur" bearing the name of the consignee of the coal so shipped, and the facts in the case establish that it has been the custom and practice of the carrier to place such consignment so billed on the "spur" of the consignee, delivery will not be complete if the car is left on a siding or switch of the railroad, unless notice of such action by the carrier is given the consignee, in which event the carrier would be absolved from following the custom which had obtained from previous course of dealing with the consignee.

Appeal from Civil District Court, Division A.

Clegg & Quintero, W. C. McLeod, Plaintiff and Appellee.

Howe, Spencer & Cocke, L. De Poorter, Defendant and Appellant.

ESTOPINAL, J. On July 4th, 1905, the plaintiff shipped via the defendant Railroad Company one carload of coal, consigned to L. S. Webre's Spur, near Grosse Tete, La. The plaintiff's plantation, known as the Bellevue Plantation, adjoins the plantation of Wilbert's Sons, both places being traversed by

the main line of defendant's railway. At this point is a switch known as Wilbert's switch, from which switch are two "spurs," one known as "Webre's Spur," extending over the Bellevue Plantation to a point near the sugar-house on said plantation, owned by L. S. Webre, and the other known as "Wilbert's Spur," extending over the property of Wilbert's Sons to a point near their lumber plant.

The defendant placed the care on *Wilbert's Switch,* whether near "Webre's Spur" or near "Wilbert's Spur," the record does not show, and the coal so placed on the switch was appropriated by Wilbert's Sons.

The latter claim that they took the coal in return for a carload of coal that they had previously loaned L. S. Webre, and were authorized so to do by L. S. Webre, through his agent, one Donaldson.

This circumstance, which we shall presently discuss, forms the burden of the defense to plaintiff's claim, the defendant in its answer averring: "That the car of coal was duly delivered at its destination to L. S. Webre, the consignee, who permitted same to be turned over to A. Wilbert's Sons to replace a car of coal which the said consignee had borrowed from the said Wilberts some time, previous; that it was with the *consent* of said consignee that the said Wilberts took said car of coal in return for that which had been borrowed from them by L. S. Webre.

If there was proof supporting these allegations, the defense would be absolutely good. The facts found in this record do not fit in.

We first take up the question of delivery. Did the placing of the car consigned to "Webre's Spur," on "Wilbert's Switch," constitute delivery, particularly when not followed by notice of any kind to the consignee, and in the absence of any chalk or other mark of identification on said car?

Defendant contends that when it dropped the car on Wilbert's Switch at "Webre's Spur," delivery was complete, and that if there was a wrong delivery it was sanctioned and ratified by Webre, in assuming control of the car of coal and entering into negotiations with the Wilberts for the purpose of adjusting the difference in price and tonnage of the car, which is the subject of this controversy, and another car previously

128

loaned by the Wilberts to Webre, thereby relieving the carrier from liability. In brief of defendant we are referred to certain authorities, adjudications of other States, to the effect that the particle "to," stated in the bill of lading, excludes the spurtrack, which is the terminus referred to in the bill of lading."

We have examined these cases, and find that they deal with descriptions in deeds and indictments, and can have no application to the instant case. We fail to locate in the books to which our attention has been directed by counsel for defendant the particular quotation which he cites in his brief. But admitting that the authorities have been fairly produced in brief, we cannot see the application of these to this case. The custom which prevailed in reference to delivery on the "Spur" assumed the force of law, and could not be brushed aside and avoided by the carrier without some notice to the other party.

Defendant in this case had, theretofore, made delivery to L. S. Webre, by placing cars consigned to him, not on Wilbert's Switch, but cn "Webre's Spur," and we opine to the belief that when defendant failed to do this, but left car o nthe switch, the consignee was entitled at least to some notice of such consignment so delivered.

One Hoel, Agent of defendant at Grosse Tete, La., says in his testimony: "Car 7259 left on Wilbert's siding," so as to be placed on "Webre's Switch (spur). Webre's Switch (spur) is a branch from Wilbert's siding, all connected together, car to be placed there first before reaching Webre's track (spur)."

"Yes, sir; it is customary to leave cars on Wilbert's siding *when short of time.* Car arriving at Wilbert's from Webre *has arrived at destination.* The placing at sugar-house being a matter of switching when more convenient to do so."

Here we are told that a car consigned to "Webre's Spur" is left on Wilbert's Switch *when short of time,* permitting the inference that, when not short of time, a car consigned to Webre is at once placed cn his "spur;" otherwise it is placed on Wilbert's Switch, and at some time or other the carrier, when so disposed or when it has the spare time, will place the car on the "spur" belonging to the consignee.

Our conception of this condition leads us to the conclusion that the carrier has in this case, by its long course of dealing, established a rule or method of delivery which it cannot set

aside or disregard at will. The carrier cannot be heard to say: "True, I have always made delivery by placing cars consigned to Webre on his 'spur,' but I did this when convenient for me to do so. I failed to place this car on his 'spur,' as usual, but the delivery was nevertheless complete when the car was left on the main switch (Wilbert's). It is simply a matter of convenience for me." And so it does not appear that the consignee's convenience at all concerns the carrier.

We think the carrier might change his manner of delivering a consignment by making it on the "switch," instead of on the "spur," but in that case the consignee is entitled to notice of such delivery from the carrier. In this case there was no notice and no mark of identification on the car, and, in our opinion, no complete delivery.

"But," says defendant, "if there was a wrong delivery, it has been ratified by Webre, who assumed control of the car of coal and entered into negotiations with the Wilberts with a view of making a trade for the coal." We do not think the record warrants the statement that "Webre assumed control of the coal." The fact is that he did not. He was the consignee, but the coal was never delivered to him. It was appropriated by the Wilberts, who, in the absence of any mark of identification, presumed it was theirs. Fred S. Booksh, Manager of A. Wilbert's Sons' logging business, says in his testimony:

"There were no marks on car. I did not know who car belonged to, but presumed it belonged to A. Wilbert's Sons or Louis S. Webre, as no other parties receive coal at this switch. I presumed that the car belonged to A. Wilbert's Sons, but, finding, *after taking* car, that it belonged to Louis S. Webre, I saw his representative and told him as to the matter, and he stated all right, as Louis S. Webre owed A. Wilbert's Sons a car of coal."

Webre, as will be seen, had not obtained control of the coal, and became aware that an empty car "7259" had contained coal consigned to him by referring to a statement received by him from the consignor. Upon examining the coal which he found in the possession of the Wilberts, he discovered that it was of a better or higher grade and costlier than that which the Wilberts had loaned him. In negotiating with the Wilberts for the delivery to them of the car of coal that he owed them,

Webre demanded the difference in the price of the two carloads of coal. This the Wilberts would not agree to, and the negotiations were dropped.

L. S. Webre, never having received the coal or exercised control over it, he refused to pay E. C. Webre.

The right of E. C. Webre to prosecute this suit is contested by the defendant, on the ground that he is without interest, and that the consignee is the proper person to sue.

In view of the fact that the non-delivery of the coal by the carrier resulted in the non-consummation of a contemplated sale conditioned upon delivery, leaves the ownership in the consignor, who is the only sufferer in the transaction. There is no merit in this contention. The defendant's only concern in seeking to have the proper plaintiff, would be to avoid double payment. The consignee of this coal, L. S. Webre, has testified, and is virtually made party to this suit, and is estopped thereby from ever asserting any claim against defendant for the value of the coal.

The remittitur entered by plaintiff can have no legal effect, either for or against him, the same having been made after judgment was rendered. The record contains no proof in support of the item of sixty-two 50-100 ($62.50) Dollars claimed by plaintiff for the loss of time, trouble, annoyance and vexation, and this must be rejected.

For the reasons assigned, it is, therefore, ordered, adjudged and decreed that the judgment appealed from be amended by reducing the same from two hundred and fifty ($250.00) Dollars, to one hundred and eighty-seven dollars and fifty cents ($187.50) and as thus amended it is affirmed, plaintiff to pay costs of appeal, and defendant those of the lower court. Amended.